# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **GeoSymm Ventures LLC,** | Case No. 24-834-RGA |
| Plaintiff, | Patent Case |
| v. | Jury Trial Demanded |
| **Bitonic Technology Labs, Inc.,** | |
| Defendant. | |

### FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

1. Plaintiff GeoSymm Ventures LLC ("Plaintiff"), through its attorneys, complains of Bitonic Technology Labs, Inc. ("Defendant"), and alleges the following:

### PARTIES

2. Plaintiff GeoSymm Ventures LLC is a limited liability company organized and existing under the laws of Texas that maintains its principal place of business at 5900 Balcones Dr, Suite 100, Austin, TX 78731.

3. Defendant Bitonic Technology Labs, Inc. is a corporation organized and existing under the laws of DE that maintains an established place of business at 400 ConcarDr., San Mateo, CA 94402.

### JURISDICTION

4. This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

5. This Court has exclusive subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

1

6. This Court has personal jurisdiction over Defendant because it has engaged in systematic and continuous business activities in this District. As described below, Defendant has committed acts of patent infringement giving rise to this action within this District.

### VENUE

7. Venue is proper in this District under 28 U.S.C. § 1400(b) because Defendant has an established place of business in this District. In addition, Defendant has committed acts of patent infringement in this District, and Plaintiff has suffered harm in this district.

### PATENT-IN-SUIT

8. Plaintiff is the assignee of all right, title and interest in United States Patent No. 9,130,900 (the "Patent-in-Suit"); including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the Patent-in-Suit. Accordingly, Plaintiff possesses the exclusive right and standing to prosecute the present action for infringement of the Patent-in-Suit by Defendant.

### THE '900 PATENT

9. The '900 Patent is entitled "Assistive agent," and issued 2015-09-08. The application leading to the '900 Patent was filed on 2013-03-15. A true and correct copy of the '900 Patent is attached hereto as Exhibit 1 and incorporated herein by reference.

10. Prior to the invention of the '900 Patent, conventional virtual assistant systems and personal information managers were ineffective at providing personalized, context-aware assistance to users. These conventional systems typically relied on segregated data sources that operated independently. As explained in the '900 Patent, "[h]aving all this relevant information available in one place may have enhanced user productivity, but these PIMs have failed to take full advantage of the information." '900 Patent, 1:21-23.

11.     The conventional virtual assistant solutions of the prior art had several technological deficiencies. As the patent explains, "when a user creates a new appointment, she must still discern how long of a lead time will be needed for a reminder, or provide one default value that is used for all reminders." '900 Patent, 1:24-26. Furthermore, "if the user is not at her desk when the reminder is triggered, then she may forget the appointment, and the reminder is wasted. Ultimately, PIMs and their users do not take full advantage of the information available to them to further enhance productivity." *Id.* at 1:26-31.

12.     Prior art virtual assistant systems were limited in their ability to provide comprehensive assistance. The '900 Patent acknowledges existing solutions such as Siri, noting that "Siri is a virtual personal assistant for the mobile Internet. Although just in its infancy, Siri can help with some common tasks that human assistants do, such as booking a restaurant, getting tickets to a show, and inviting a friend." '900 Patent, 1:48-52. However, these solutions lacked integration with diverse semantic web services and, in particular, personalized context awareness.

13.     The '900 Patent addressed these technological deficiencies by providing "a system and method for providing automated assistance for a user using a computing device" that "comprises, receiving a user request for assistance" and "determining semantics of the user request and identifying at least one domain, at least one task, and at least one parameter for the user request." '900 Patent, Claim 1. The invention recognized the need to "access one or more semantic web services through an application and determine at least one responsive answer such as to respond to the user request." '900 Patent, Abstract.

14.     To address the technological deficiencies of the prior art and to provide for enhanced assistance, the '900 Patent claims unconventional and inventive systems and methods

3

for implementing an assistive agent that provides seamless integration between user requests and diverse semantic web services. The patent describes a system that "may balance the apparent considerations such as by allowing integration of the user request, often from various semantic web services, in a consistent manner such as for supply of relevant output data to the user." '900 Patent, 3:5-8.

15. The systems and methods claimed in the '900 Patent represent an architectural advancement in virtual assistant technology by providing a mechanism that maintains contextual integrity through a unified approach. Rather than simply computerizing pre-existing processes, the '900 Patent claims specific implementations not previously available in the prior art, wherein "the integration of speech-to-text and natural language understanding technology may be constrained by a set of explicit models of domains, tasks, services, and dialogs, which may allow parsing the user voice statement such as to generate better interpretations of the semantics." '900 Patent, 9:53-56. This significantly improved how virtual assistants were able to interact with users and external services.

16. The assistive agent systems and methods claimed in the '900 Patent improved computer functionality by enabling the system to "operationalize semantic intent into a strategy for using online semantic web services and executing the strategy on behalf of the user." '900 Patent, 10:8-11. Contrary to conventional approaches of the prior art, such as Siri, the unconventional and inventive approach of the prior art significantly enhanced efficiency in several ways: it eliminated redundant service calls by intelligently selecting only the necessary semantic web services, reduced processing overhead through early disambiguation of user intent, minimized network traffic by transforming "task parameters and constraints to meet input requirements of service APIs" ('900 Patent, 11:9-11), and improved response time by supporting

concurrent service calls where appropriate. By "determining intent at an early phase of input processing" ('900 Patent, 9:59-60), the system avoided wasteful computational resources that would otherwise be spent on processing ambiguous or irrelevant service requests. This represented a tangible advancement in virtual assistant technology that directly translated to more efficient use of computing resources, network bandwidth, and processing power while delivering more accurate and contextually relevant responses to users.

17. As the '900 Patent explains, the system "may use dialog history in interpreting the natural language of user inputs. Because the server may keep track of the user personal history and apply natural language understanding on user inputs." '900 Patent, 10:5-8. The server also "may automatically transform task parameters and constraints to meet input requirements of service APIs." '900 Patent, 11:9-11. This provides a more efficient solution than conventional systems by enabling seamless integration between user requests and various services.

18. Thus, the claims of the '900 Patent describe a specific improvement to the way computers operate and implement virtual assistants by employing a unified approach that can "perform operations or functions on the computing device on behalf of the user" such as "for example, actively interview the user to elicit information or input, interpret user intent, disambiguate among candidate interpretations, request and clarify required information from the user, perform actions based on the user intent." '900 Patent, 5:9-16.

19. The inventive and unconventional assistive agent claimed in the '900 Patent incorporates personalized context awareness, as it "may be configured to use dynamic data about the user such as for example, but not limited to, user location, time, profile, recent activities, and the like." '900 Patent, 18:12-15. The system's ability to combine user context with service integration provides a significant technological advancement over prior art solutions.

20.    Claim 1 of the '900 Patent introduces a novel architectural framework that fundamentally transforms how virtual assistant systems process and respond to user requests. This architecture establishes a multi-layered semantic processing pipeline that differs from prior art systems by placing semantic intent determination at the center of the system's design. Whereas conventional systems and methods employed a fragmented approach with distinct, disconnected modules for speech recognition, command processing, and service access ('900 Patent, 1:23-37), the inventive and unconventional architecture of the '900 Patent implements a unified semantic interpretation layer. This architectural innovation integrates contextual awareness (of, e.g., location and personal data) directly into the semantic processing pipeline, allowing the system to interpret user requests within their proper context before any service calls are made. By restructuring the system architecture around semantic intent determination as the mediating layer between user interaction and service access, the invention achieves substantial efficiency improvements through optimized service selection, reduced processing overhead, minimized network traffic, and parallel service execution.

21.    These inventive concepts are captured in the limitations of Claim 1 reciting the steps of "determining semantics of the user request and identifying at least one domain, at least one task, and at least one parameter for the user request by parsing the user request" and "accessing one or more semantic web services, each service accessed through an application program interface (API) to retrieve data matching the at least one domain, at least one task, and at least one parameter." '900 Patent, claim 1. These steps embody the inventive assistive agent that integrates user request semantics with semantic web services through a unified API approach.

22. None of the methods or systems of the '900 Patent were previously performed by human beings, or capable of being performed in the human mind. The invention specifically addresses computer-implemented solutions to technical problems in virtual assistant technology, providing a technological improvement that enhances computer functionality through semantic analysis and service integration.

### COUNT 1: INFRINGEMENT OF THE '900 PATENT

23. Plaintiff incorporates the above paragraphs herein by reference.

24. **Direct Infringement**. Defendant has been and continues to directly infringe one or more claims of the '900 Patent in at least this District by making, using, offering to sell, selling and/or importing, without limitation, at least the Defendant products identified in the charts incorporated into this Count below (among the "Exemplary Defendant Products") that infringe at least the exemplary claims of the '900 Patent also identified in the charts incorporated into this Count below (the "Exemplary '900 Patent Claims") literally or by the doctrine of equivalents. On information and belief, numerous other devices that infringe the claims of the '900 Patent have been made, used, sold, imported, and offered for sale by Defendant and/or its customers.

25. Defendant also has and continues to directly infringe, literally or under the doctrine of equivalents, the Exemplary '900 Patent Claims, by having its employees internally test and use these Exemplary Products.

26. **Actual Knowledge of Infringement**. The service of the Original Complaint filed on July 18, 2024, in conjunction with the attached claim charts and references cited, constitutes actual knowledge of infringement as alleged here.

7

27. Despite such actual knowledge, Defendant continues to make, use, test, sell, offer for sale, market, and/or import into the United States, products that infringe the '900 Patent. On information and belief, Defendant has also continued to sell the Exemplary Defendant Products and distribute product literature and website materials inducing end users and others to use its products in the customary and intended manner that infringes the '900 Patent. See Exhibit 2 (extensively referencing these materials to demonstrate how they direct end users to commit patent infringement).

28. **Induced Infringement**. At least since being served by this Complaint and corresponding claim charts, Defendant has actively, knowingly, and intentionally continued to induce infringement of the '900 Patent, literally or by the doctrine of equivalents, by selling Exemplary Defendant Products to their customers for use in end-user products in a manner that infringes one or more claims of the '900 Patent.

29. Exhibit 2 includes charts comparing the Exemplary '900 Patent Claims to the Exemplary Defendant Products. As set forth in these charts, the Exemplary Defendant Products practice the technology claimed by the '900 Patent. Accordingly, the Exemplary Defendant Products incorporated in these charts satisfy all elements of the Exemplary '900 Patent Claims.

30. Plaintiff therefore incorporates by reference in its allegations herein the claim charts of Exhibit 2.

31. Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement.

## JURY DEMAND

32. Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully requests a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

A.  A judgment that the '900 Patent is valid and enforceable

B.  A judgment that Defendant has infringed directly and indirectly one or more claims of the '900 Patent;

C.  An accounting of all damages not presented at trial;

D.  A judgment that awards Plaintiff all appropriate damages under 35 U.S.C. § 284 for Defendant's continuing or future infringement, up until the date such judgment is entered with respect to the '900 Patent, including pre- or post-judgment interest, costs, and disbursements as justified under 35 U.S.C. § 284;

E.  And, if necessary, to adequately compensate Plaintiff for Defendant's infringement, an accounting:

   i.  that this case be declared exceptional within the meaning of 35 U.S.C. § 285 and that Plaintiff be awarded its reasonable attorneys fees against Defendant that it incurs in prosecuting this action;

   ii. that Plaintiff be awarded costs, and expenses that it incurs in prosecuting this action; and

      iii.    that Plaintiff be awarded such further relief at law or in equity as the Court deems just and proper.

Dated: April 3, 2025　　　　　　　　　　Respectfully submitted,

<u>/s/ Antranig Garibian (DE Bar No. 4962)</u>
Antranig Garibian (DE Bar No. 4962)
Garibian Law Offices, P.C.
1523 Concord Pike, Suite 400
Wilmington, DE 19803
(302) 722-6885
ag@garibianlaw.com

Isaac Rabicoff
Rabicoff Law LLC
(*Pro hac vice* application forthcoming)
4311 N Ravenswood Ave Suite 315
Chicago, IL 60613
7736694590
isaac@rabilaw.com

**Counsel for Plaintiff**
**GeoSymm Ventures LLC**